UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHELLE L. DUNFEE,

        Plaintiff,

    v.                                           CAUSE NO. 3:20-CV-345 DRL

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

## OPINION & ORDER

        Michelle L. Dunfee appeals from the Social Security Commissioner's final judgment denying her disability insurance benefits and supplemental security income. Ms. Dunfee requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court denies remand and affirms the Commissioner's decision.

## BACKGROUND

        Ms. Dunfee suffers from a variety of physical and mental health impairments. Ms. Dunfee's severe physical impairments include breast cancer with history of mastectomy of the right breast, degenerative disc disease of the cervical spine, de Quervain's tenosynovitis of the left wrist, and osteoarthritis of the right hand [R. 563]. Ms. Dunfee also suffers from the non-severe physical impairments of atypical glandular uterine cells with history of total hysterectomy and degenerative disc disease of the lumbar spine [R. 563]. Ms. Dunfee also suffers from the severe mental impairments of major depressive disorder, anxiety, and mild cognitive impairment [R. 563]. Ms. Dunfee suffers from the nonmedically determinable impairments of chronic obstructive pulmonary disorder (COPD), attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD) [R. 563]. Ms. Dunfee has a GED and has past relevant work as a shipping and receiving clerk [R. 51, 579].

Ms. Dunfee filed Title II and Title XVI applications for benefits on February 5, 2013, alleging disability beginning August 25, 2011 [R. 23]. They were denied initially on May 7, 2013, and again on reconsideration on July 24, 2013 [*Id.*]. Her claims were heard by an Administrative Law Judge (ALJ) in a hearing on February 9, 2015 [*Id.*]. In a February 20, 2015, decision, the ALJ denied Ms. Dunfee's petition on the basis that she could not show that she was disabled as defined by the Social Security Act [R. 36-37].

The ALJ found that Ms. Dunfee has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently, and can sit, stand, and walk for 6 hours in an 8-hour workday [R. 567]. She is unable to climb ladders, ropes, or scaffolds or perform overhead reaching with the bilateral upper extremities [*Id.*]. The claimant may occasionally climb ramps and stairs, balance, stoop, crouch, kneel or crawl [*Id.*]. She can frequently use hand controls and foot controls with the bilateral upper and lower extremities, reach in front or laterally with the upper extremities, and handle and finger with upper extremities [*Id.*]. She must have no exposure to hazards such as moving mechanical parts or unprotected heights [*Id.*]. The claimant is able to understand, remember and carry out work that consists of no more than simple and routine tasks, in a work environment free of fast paced or timed piece rate production work but could meet end of day goals [R. 567-68]. She is able to use routine judgment—defined as being able to make simple work-related decisions—and she can tolerate simple workplace changes [*Id.*]. The ALJ found that Ms. Dunfee could not perform any of her past relevant work [R. 579]. However, the ALJ found that she could perform a significant number of jobs in the national economy [*Id.*]. This decision became final when the Appeals Council denied Ms. Dunfee's request for review [R. 1].

2

STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g), though review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence that "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Dunfee challenges the ALJ's conclusion that she is not totally disabled. She argues three errors: (1) the ALJ failed to follow the remand order by properly weighing opinion evidence; (2) the ALJ failed to account for her limitations in concentrating, persisting, and maintaining pace as instructed by the remand order; and (3) the ALJ erred in determining her mental RFC.

A.  *Medical Opinion Evidence.*

The ALJ determined that Ms. Dunfee could perform light work with a number of limitations [R. 567]. Ms. Dunfee says the ALJ erred in weighing opinion evidence, specifically the opinion of her treating physician, Dr. Bjonback, rendering the RFC unsupported by the evidence. The ALJ is required to evaluate medical opinions using the following factors: the examining relationship; the treatment relationship (including length of treatment and frequency of examination and the nature and extent of the treatment relationship); the opinion's support; the opinion's consistency with the record; the physician's specialization; and other factors. 20 C.F.R. § 404.1527(c).

Dr. Bjonback provided a medical source statement in January 2015 [R. 461-66]. Dr. Bjonback opined that Ms. Dunfee could lift less than 10 pounds in any situation, and that she could only stand or walk for 30 minutes at a time due to back pain [R. 462-63]. Dr. Bjonback said Ms. Dunfee could only sit for 15 to 20 minutes at a time due to back pain [R. 463]. She opined that Ms. Dunfee could occasionally climb ramps, stairs, and ladders, never climb ropes or scaffolds, and occasionally balance, kneel, crouch, crawl, and stoop [R. 464]. She also said Ms. Dunfee would be limited to occasional handling and fingering due to osteoarthritis of her fingers [R. 465]. Finally, Dr. Bjonback opined that Ms. Dunfee would need to have limited exposure to temperature extremes, dust, humidity/wetness, hazards, fumes, odors, chemicals, and gases [R. 466].

The ALJ afforded this opinion little weight, finding that it is "not consistent with the record, which contains Dr. Bjonback's own notes" [R. 577]. The ALJ found that notes from the same day as the opinion indicated an unremarkable physical examination "except for crepitus and painful

4

movement of her shoulders, arthritic changes of her hands and swelling and tenderness of her left 3rd toe" [R. 577]. The ALJ found it "interesting to note that Dr. Bjonback did not include any limitations in her ability to reach in spite of the crepitus of her shoulders" [R. 577]. The ALJ also noted that Ms. Dunfee "longitudinally" displayed full strength, range of motion and sensation of her extremities, which was inconsistent with the opinion that she would have extreme limitations in her ability to sit, stand or lift/carry objects [R. 577]. The ALJ also noted that an unremarkable nerve conduction study of the upper extremities was inconsistent with the alleged numbness and tingling of her upper extremities [R. 577].

Ms. Dunfee asserts that the ALJ erred by failing to develop the record by requesting Dr. Bjonback's treatment records following her 2015 opinion. The claimant has the burden of proving disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a). At the second hearing, the ALJ asked Ms. Dunfee's attorney whether the record was complete, and the attorney stated "[a]s far as I know, it is, Your Honor" [R. 593]. There was no indication that the record was incomplete. Furthermore, Ms. Dunfee was represented at the hearing, and "when the claimant is unrepresented by counsel, the ALJ has a duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007); citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994). The ALJ did not fail to request further records from Dr. Bjonback that she had no reason to be aware existed.

Ms. Dunfee further alleges that the ALJ erred in finding that Dr. Bjonback's opinion was inconsistent with the medical record. Ms. Dunfee provides no support for this allegation. She points to one treatment note [R. 471]. The note includes evidence that the ALJ addresses, but Ms. Dunfee asserts that the ALJ failed to acknowledge that the note indicates she was "far more limited than the

5

ALJ claimed" [ECF 13 at 15]. However, the ALJ discussed all of the information Ms. Dunfee asserts the ALJ failed to acknowledge. The ALJ noted shoulder crepitation, pain with movement, arthritic changes in her hands, and swelling and tenderness of her left third toe [R. 577]. Ms. Dunfee asserts that the ALJ ignored limited range of movement in her shoulder, tight neck muscles, redness in her toe, and severe arthritic changes to her hands [R 471]. The ALJ did not mischaracterize this evidence. Ms. Dunfee does not point to anything in the medical record that shows Dr. Bjonback's opinion is consistent with the medical record, or that the ALJ's decision wasn't supported by substantial evidence.

Ms. Dunfee also asserts that the ALJ erred in finding there was no evidence to support Dr. Bjonback's opined limitations in her ability to lift or carry objects. Ms. Dunfee argues that the record shows she was repeatedly instructed not to lift more than ten pounds. However, both treatment notes instructing Ms. Dunfee not to lift more than ten pounds were stated as being due to her mastectomy [R. 333, 468]. One note from 2011 stated that she was limited due to her breast cancer and chemotherapy, and that her oncology stated she couldn't lift anything over ten pounds [R. 333]. The other note is from 2015 and stated that she "cannot use her arm [due] to her mastectomy – she has been limited to lifting only 8 pounds on that side" [R. 468]. However, the ALJ found that Ms. Dunfee has "longitudinally displayed full strength, range of motion and sensation of her extremities" [R. 577]. At the consultative examination, she was noted to have normal range of motion, normal grip strength, normal motor, and no weakness of the extremities in direct strength testing [R. 404]. In 2013, she was noted to have normal muscle strength, bulk, and tone in the upper and lower extremities [R. 408]. A note from Dr. Bjonback in 2013 noted "normal strength, tone and bulk in all extremities" [R. 435]. Further examinations noted normal strength, tone, and bulk in all extremities [R. 522, 528, 431]. The ALJ properly supported her finding that the overwhelming evidence did not support Dr. Bjonback's opinion regarding Ms. Dunfee's limitations in lifting and carrying. Moreover, the ALJ relied on the

opinion of the impartial medical expert, Dr. Arnold Ostrow, in creating the RFC [R. 575]. Dr. Ostrow testified that Ms. Dunfee could limit and/or carry 20 pounds occasionally and 10 pounds frequently. The ALJ supported her decision with substantial evidence.

Ms. Dunfee also argues that the ALJ erred by not observing that Dr. Bjonback's opinion regarding her ability to sit and stand is consistent with a single treatment note that stated her pain worsened with inactivity [ECF 13 at 16]. Ms. Dunfee asserts that this single treatment note means that the ALJ "failed to provide a legally sufficient explanation for the weight granted to Dr. Bjonback's opinion" [ECF 13 at 16]. However, the ALJ relied on the testimony of Dr. Ostrow, who opined that Ms. Dunfee could sit, stand and/or walk for six hours in an eight-hour workday [R 575]. The state agency physician also opined that Ms. Dunfee could sit, stand and/or walk for six hours in and eight-hour workday [R 576]. Moreover, the treatment note cited to by Ms. Dunfee is for a rheumatology consult, and the report is mostly subjective symptoms reported by Ms. Dunfee [R. 1019]. She reported that her symptoms were worsened both by inactivity and activity [*Id.*]. The ALJ found Ms. Dunfee's subjective symptoms to be inconsistent with the objective evidence, noting that she was able to walk with normal gait and "displayed full strength, range of motion and sensation of her extremities" [R. 575]. Ms. Dunfee has provided no evidence that she cannot sit, stand and/or walk for six hours in and eight-hour workday, and the ALJ supported her decision with substantial evidence.

Ms. Dunfee argues that the ALJ erred in relying on non-examining physician opinions over the treating physician's opinion. However, this is only an error if the *only* contradictory evidence is a non-examining physician's opinion. *See Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). ("a contradictory opinion of a non-examining physician does not, by itself, suffice" in rejecting a treating physician's opinion). In such a case, "the ALJ effectively substitute[s] [her] own judgment for that of a treating physician, which an ALJ cannot do." *Oakes v. Astrue*, 258 Fed.Appx. 38, 45 (7th Cir. 2007) (citing *Clifford*, 227 F.3d at 870). This is not the case here. The ALJ provided a thorough explanation

for why she provided Dr. Bjonback's opinion little weight. The ALJ looked to Dr. Bjonback's own treatment notes and a nerve conduction study in finding that Dr. Bjonback's opinion was not supported by the record. The ALJ provided the requisite logical bridge and supported her conclusion with evidence in the record.

Ms. Dunfee provides a two-sentence argument asserting that the vocational expert was not given the opportunity to testify as to the availability of jobs with only occasional front and lateral reaching. Dr. Ostrow opined at the hearing that Ms. Dunfee could only perform occasional front and lateral reaching, and Ms. Dunfee takes issue with the fact that this limitation was not included in any hypothetical to the vocational expert. This argument is both undeveloped and illogical. Ms. Dunfee is not arguing that the ALJ should have accepted Dr. Ostrow's opinion regarding front and lateral reaching. Instead, she is arguing that, though the ALJ did not include such a limitation in the RFC, it should have been included in the hypothetical to the expert. The ALJ explained in her decision why she did not include such a limitation in the RFC. The ALJ found that "the claimant is able to frequently reach in front or laterally with the upper extremities, as notes from examinations indicate that the claimant has longitudinally displayed full strength, sensation and range of motion of her upper extremities, with the exception of her hands" [R. 576]. The ALJ did not include Dr. Ostrow's limitation to occasional front and lateral reaching in the RFC, so that limitation didn't need to be presented to the vocational expert to determine job availability.

      B.      *Concentrating, Persisting, and Maintaining Pace.*

Ms. Dunfee next argues that the ALJ failed to account for her moderate limitations in concentrating, persisting, and maintaining pace in violation of the remand order. The court remanded Ms. Dunfee's case because limiting her to "simple, routine, and repetitive tasks with only occasional changes in the work setting and no fast production pace" did not adequately provide for her limitations without an explanation and evidence in the record [R. 28, 709-11]. Ms. Dunfee asserts that the ALJ

did no more than "re-word[] the previous RFC determination" [ECF 13 at 19]. In the original 2015 RFC, the ALJ limited Ms. Dunfee to "simple, routine, and repetitive tasks with only occasional changes in the work setting and no fast production pace" [R. 28]. In the 2019 decision, the ALJ found that Ms. Dunfee is able to "understand, remember and carry out work that consists of no more than simple and routine tasks, in a work environment free of fast paced or timed piece rate production work but could meet end of day goals; she is able to use routine judgment defined as being able to make simple work-related decisions, and she can tolerate simple workplace changes" [R. 568].

An ALJ need not use the exact words "concentrating, persisting, and maintaining pace" in the hypothetical to the vocational expert so long as either the record shows that the expert independently reviewed the medical record or heard testimony addressing the limitations, or if the ALJ's hypothetical specifically excludes any tasks "that someone with the claimant's limitations would be unable to perform." *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). A hypothetical stating that an "individual can understand, remember, and carry out simple work instructions," can "exercise simple work place judgments," is "limited to routine work," and can have "no more than occasional changes in the work setting" is insufficient in certain circumstances to account for moderate limitations in concentrating, persisting, and maintaining pace. *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018). Similarly, in certain circumstances, this circuit has "rejected the notion that a hypothetical … confining the claimant to simple, routine tasks and limited interactions with other adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Yurt v. Colvin*, 758 F.3d 850, 858-59 (7th Cir. 2014). But these cases have not been interpreted as a blanket rule that limitations to simple, routine, and repetitive tasks always fail to accommodate moderate difficulties in concentration, persistence, and pace. *See, e.g., William F. v. Saul*, 2019 WL 4727722, 4 (N.D. Ind. Sept. 26, 2019) (DeGuilio, J.) (finding that an ALJ incorporated moderate limitations in concentration, persistence, and pace by limiting the claimant to "simple, routine, or repetitive tasks" and "to simple

9

work-related decisions"). Just recently, this circuit found that an ALJ's RFC determination limiting the hypothetical individual to simple, routine, and repetitive tasks with interaction limitations addressed the claimant's moderate difficulties in concentration, persistence, and pace because the ALJ tied the record evidence to the limitation in the RFC finding. *Jozefyk v. Berryhill*, 923 F.3d 492, 497-98 (7th Cir. 2019). Thus, this court must inquire as to whether the ALJ's RFC limitations are accurately tied to the record evidence. Each RFC must be assessed on a case-by-case basis.

In discussing the paragraph B criteria, the ALJ found that Ms. Dunfee has moderate limitations in her ability to concentrate, persist, and maintain pace [R. 566]. The ALJ noted that Ms. Dunfee testified that she needs reminders to complete tasks, that she has problems focusing, and that she has low levels of motivation [*Id.*]. However, the ALJ noted that Ms. Dunfee indicated in her function report that her inability to perform chores was limited by her physical impairments rather than her mental impairments, and that she is able to focus her attention for as long as necessary as long as she does not have a panic attack [*Id.*]. Moreover, Ms. Dunfee told the psychological consultative examiner that she tries to do as much housework as possible [*Id.*]. Finally, the ALJ noted that her neuropsychological testing "indicates that she has only a mild cognitive impairment and mental status examinations have longitudinally indicated that she has been alert and fully oriented with intact memory and logical thought processes" [*Id.*].

The ALJ's 2019 RFC is not, as Ms. Dunfee alleges, "an RFC that boil[s] down to the exact same RFC as previously determined" [ECF 13 at 19]. The ALJ added restrictions to accommodate Ms. Dunfee's limitations in concentrating, persisting, and maintaining pace. Ms. Dunfee's argument here is simply that the ALJ failed to comply with the remand order by accommodating Ms. Dunfee's moderate limitations in concentrating, persisting, and maintaining pace. Ms. Dunfee is not arguing that the additional limitations fail to accommodate her moderate limitations. She argues that since the

10

RFC is "the exact same RFC as previously determined," that the ALJ erred [ECF 13 at 19]. However, the ALJ provided new limitations in the 2019 RFC, as well as additional discussion of her impairments.

Problematically, in challenging the ALJ's assessment of her ability to concentrate, persist, or maintain pace, Ms. Dunfee does not refer to her individualized medical history or to the medical evidence of the record. Nor does Ms. Dunfee identify with any specificity how the RFC should have been changed or what additional functional limitations are supported by the record. Ms. Dunfee does not even argue that she is incapable of performing the assessed RFC or hypothetical questions posed to the vocational expert.

By contrast, the ALJ relied on the record and discussed Ms. Dunfee's medical limitations [R. 566]. The ALJ discussed not only Ms. Dunfee's activities and self-reported struggles, but also notations from the psychological consultative examination and neuropsychological testing [*Id.*]. The ALJ also discussed how Ms. Dunfee was alert and fully oriented throughout the medical records, as well as showed focused concentration, logical and goal directed thought process, and intact levels of insight, judgment, and memory [R. 569-73, 929]. The ALJ also noted that after medication changes in 2017, Ms. Dunfee reported that she was concentrating better was able to stay on task longer [R. 573, 936]. In 2019, Ms. Dunfee was alert and fully oriented, showed focused concentration, logical and goal directed thought process, and intact levels of consciousness, memory, insight, memory, and judgment [R. 574, 981, 984].

The limitations imposed by the ALJ in the RFC and the hypothetical to the vocational expert take into consideration all these pieces of evidence. The ALJ found that Ms. Dunfee has moderate limitations in concentration, persistence, and pace. This contrasts with the state psychological consultant's finding. The state psychological consultant opined that Ms. Dunfee had no limitations in concentrating, persisting, or maintaining pace [R. 576]. The mental health expert at the hearing testified that Ms. Dunfee had only mild limitations in concentrating, persisting, and maintaining pace [R. 576].

Yet the ALJ found that Ms. Dunfee had moderate limitations, and she discussed those limitations in the decision. The ALJ properly discussed the evidence and supported her conclusion with substantial evidence as required by *Jozefyk*, 923 F.3d at 497-98.

      C.     *Mental Residual Functional Capacity.*

Ms. Dunfee argues that the ALJ erred in failing to address why she did not adopt the social interaction limitations from Dr. Monis, the impartial psychological expert who testified at the hearing. Dr. Monis called Ms. Dunfee's anxiety and depression nonsevere [R. 576, 618]. She then opined that Ms. Dunfee has moderate limitations in her ability to interact with others, but mild limitations in all of the other paragraph B criteria [R. 576, 620-21]. The ALJ provided this opinion "some weight," noting that that paragraph B limitations indicated Ms. Dunfee's anxiety and depression were, in fact, severe impairments [R. 576]. The ALJ also noted that the medical record is "more consistent with a finding that the claimant's mental impairments are 'severe'" [R. 576]. Dr. Monis testified that she would limit Ms. Dunfee to "brief, superficial contact with the public and occasional interaction with supervisors and coworkers. … I'd limit her to brief, non-depth related, in other words, just a superficial quick exchange with the public" [R. 621]. Dr. Monis also explained that she was "erring on the side of caution" and using Ms. Dunfee's subjective complaints in forming this opinion [R. 620].

The ALJ did not adopt Dr. Monis' opinion or give it great weight. The ALJ properly explained that, though she included social limitations in the hypothetical to the vocational expert, she found that "these limits are not actually supported by the record" [R. 580]. The ALJ found that "[Ms. Dunfee's] social worker indicated that she has no[] problems getting along with others" [R. 580]. Ms. Dunfee asserts that the CE report supported Dr. Monis' opinion. However, the ALJ noted that the CE reported showed Ms. Dunfee "established excellent eye contact, cooperation and rapport, that she was nervous at the beginning of the interview, she was smiling and comfortable by the end and that

12

she was alert and fully oriented with clear speech and no cognitive distortions" [R. 574]. The ALJ properly supported her decision with substantial evidence.

Moreover, the social limitations were included in the hypothetical given to the vocational expert, and the expert found jobs that Ms. Dunfee would be able to perform [R. 580]. The hypothetical given to the vocational expert included limitations to "occasional brief and superficial interaction with the public, defined as no more involved interaction than answering discreet questions such as the location of an item in the store, and with respect to interaction with coworkers, that is occasional interaction and no tandem tasks or teamwork where one production step is dependent on the prior step" [R. 650]. Yet even with those social limitations, the vocational expert found that Ms. Dunfee could still perform the work of a mail clerk and an apparel stock checker [R. 651]. Therefore, any potential error with regard to the social interaction limitations is harmless, as the same jobs would be available to Ms. Dunfee with or without the social limitations in the RFC.

Ms. Dunfee further asserts that the ALJ failed to fully develop the record, as her therapist's opinion was missing a page. The therapist, Ms. Loughren, provided an opinion, but the record only contains one page of a two-page form [R. 578]. The ALJ has an affirmative duty to ensure a full record. *See* 20 C.F.R. § 404.1512(e)(1); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). However, the ALJ specifically asked Ms. Dunfee's attorney if the record was complete, and she explicitly stated that she had a one-page opinion from Ms. Loughren [R. 593, 598]. The attorney stated that there were no further opinions needed to evaluate the case [*Id.*]. Moreover, the ALJ provided this opinion little weight, finding that the opinions given on the one page were inconsistent with the record. The ALJ noted that mental status examinations were unremarkable "except for some sighs of depression and anxiety," and that her GAF scores were generally in the area of 58-60, which suggest "that her symptoms were stable with the exception of occasional flare-ups caused by social stressors." The ALJ also found that medication helped Ms. Dunfee. The ALJ did not err by failing to obtain the second

page in this opinion, as it was not a significant omission, and the attorney at the hearing stated that there was no further opinions needed for the ALJ to complete her decision. The ALJ will seek additional evidence from a medical opinion when "the report does not contain all the necessary information." *Simms v. Astrue*, 599 F. Supp. 2d 988, 1003 (N.D. Ind. 2009) (citing 20 C.F.R. § 404.1512(e)(1)). There is no indication here that the second page of Ms. Loughren's opinion would have contained necessary information. The first page contained information that the ALJ found to be inconsistent with the medical record, and the attorney at the hearing did not indicate that the second page was necessary. Ms. Dunfee does not assert that the second page contained necessary information, nor that the opinion would have altered the ALJ's decision. The ALJ supported her decision with substantial evidence, and Ms. Dunfee has provided no evidence or argument to show otherwise.

Ms. Dunfee then argues that the ALJ did not explain what the signs of depression and anxiety are or why they discredit Ms. Loughren's opinion. This argument is underdeveloped and vague. The ALJ found that "mental status examinations have been unremarkable except for some signs of depression and anxiety." Throughout the ALJ's decision, the ALJ described Ms. Dunfee's medical record, noting reports of anxiety and depression symptoms [R. 571-72]. However, the ALJ noted that the majority of Ms. Dunfee's mental status examinations remained unremarkable [R. 578]. Ms. Dunfee has offered no argument regarding the severity of her symptoms. Instead, she relies on a five-sentence paragraph to support her argument that the ALJ erred in discussing her mental status examinations. Ms. Dunfee has not developed an argument that the ALJ improperly discussed her depression and anxiety in weighing Ms. Loughren's opinion. *See Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (underdeveloped arguments are waived).

The ALJ also asserts that the ALJ improperly used GAF scores to discredit Ms. Loughren's opinion. The ALJ noted that although Ms. Dunfee's GAF scores were occasionally as low as 45, they rebounded to 58-60 and remained there [R. 578]. The ALJ noted that this indicated that she

occasionally suffered from more severe symptoms caused by social stressors, but that her symptoms were otherwise stable [*Id.*]. Overall, the ALJ provided individual GAF scores "minimal weight," noting that they are nothing more than "one individual's impression of [Ms. Dunfee's] mental status at that particular point in time" [R. 578]. Although the DSM-V "has abandoned the GAF … the Social Security Administration still instructs ALJs to treat GAF scores as medical-opinion evidence." *Gerstner v. Berryhill*, 879 F.3d 257, 263 n.1 (7th Cir. 2018). Moreover, multiple GAF scores done over an extended period of time may indicate the severity of mental health difficulties. *See Rice v. Berryhill*, No. 17 C 1193, 2018 WL 2049931, 6 n.6 (N.D. Ill. May 2, 2018). The ALJ properly used GAF scores in conjunction with other evidence to describe Ms. Dunfee's mental health symptoms over a prolonged period of time.

Finally, Ms. Dunfee argues that the ALJ erred in finding that her medications helped her focus. In discussing Ms. Loughren's opinion, the ALJ found that Ms. Dunfee "reported that her medication allowed her to focus and stay on task" [R. 578; 951]. Ms. Dunfee asserts that the treatment note discussed by the ALJ shows that even on medication she struggled with focus, and that she continued to complain of an inability to focus despite being on medication. The medical note in question is from December 2017. Ms. Dunfee reported that she is "focused" and "able to stay on task" [R. 951]. Though she did assert that her "mind just won't stop," she mentioned this in conjunction with her inability to sleep [R. 951]. Ms. Dunfee did not state, as she asserts in her brief, that she could not focus even while on medication. Instead, the comment about her mind not stopping was in reference to her not sleeping well. The ALJ did not mischaracterize evidence in stating that Ms. Dunfee reported she is focused and able to stay on tasks. Ms. Dunfee further argues that "the longitudinal record continued to show [Ms. Dunfee] struggled with her concentration," but she does not provide any evidence of a continuing struggle with concentration [ECF 13 at 24]. The ALJ properly supported her decision with

15

substantial evidence, as she noted Ms. Dunfee's unremarkable mental status examinations throughout her decision. [R. 568-72].

## CONCLUSION

The court finds that the ALJ did not err. The court thus DENIES Ms. Dunfee's request for remand (ECF 13) and AFFIRMS the Commissioner's decision.

SO ORDERED.

June 8, 2021  *s/ Damon R. Leichty*
Judge, United States District Court

16